**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-1389**

ADMIRAL INSURANCE COMPANY,

        Plaintiff – Appellee,

    v.

ACE AMERICAN INSURANCE COMPANY; ILLINOIS UNION INSURANCE COMPANY,

        Defendants – Appellants.

Appeal from the United States District Court for the Western District of Virginia, at Harrisonburg.   Samuel G. Wilson, District Judge. (5:08-cv-00055-sgw-jgw)

Argued: December 3, 2009        Decided: January 20, 2010

Before KING, DUNCAN, and DAVIS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED**: John L. Williams, COZEN O'CONNOR, Seattle, Washington, for Appellants.   Thomas Collier Mugavero, WHITEFORD, TAYLOR & PRESTON, LLP, Falls Church, Virginia, for Appellee. **ON BRIEF**: Thomas M. Jones, David J. Walton, COZEN O'CONNOR, Seattle, Washington, for Appellants.   Valerie L. Tetro, WHITEFORD, TAYLOR & PRESTON, LLP, Falls Church, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

ACE American Insurance Company ("Ace") and Illinois Union Insurance Company ("Illinois Union") appeal from the district court's judgment in favor of Admiral Insurance Company ("Admiral") in this insurance coverage dispute. As explained below, we affirm the district court.

I.

A.

Admiral, Ace, and Illinois Union provided insurance coverage to American HomePatient, Inc. ("AHP"), a company headquartered in Tennessee that provides home medical services and equipment. On May 16, 2006, AHP's employee, Brewer E. Hoover, Jr., shot and killed two co-employees and himself during business hours at AHP's workplace in Harrisonburg, Virginia. On July 6, 2006, the estates of the two murdered employees, Bonnie Sue H. Crump and Gary A. Gibson, each brought nearly identical wrongful death actions in the Circuit Court for Rockingham County, Virginia (the "state trial court"), against both AHP and Hoover's estate. Against AHP, each complaint asserted claims, inter alia, of negligent retention and failure to provide a safe workplace. The state trial court had occasion to outline the factual allegations of the complaints in a March 2007 decision. See Crump v. Morris, No. CL06-00547(L) (Va. Cir. Ct. Mar. 12,

2

2007) (the "State Decision").[1]   As described in the State

Decision, the complaints alleged the following:

> [Ms. Crump, Mr. Gibson, and Mr. Hoover] all worked together in the AHP office, formerly located at 182 Neff Avenue in Harrisonburg, Virginia.   During that time, [their] immediate supervisor was Greg Taylor . . . , a district manager of AHP.

> At some point, Mr. Hoover became romantically infatuated with Ms. Crump, and Mr. Hoover apparently believed that Ms. Crump and Mr. Gibson were having an extra-marital affair.  Mr. Hoover confronted Ms. Crump about his belief on March 24, 2006, after entering her office and slamming her door.  Mr. Hoover shook his fist and pointed in Ms. Crump's face while shouting at her for lying about the affair.

> Ms. Crump reported the assault to Mr. Taylor, the District Manager, by leaving telephone messages for him on the evening of March 24, 2006.  In addition, Ms. Crump left another message for Mr. Taylor on March 27, 2006, indicating that she was afraid to return to work.  However, Mr. Taylor never contacted Ms. Crump regarding those telephone messages.

> Mr. Hoover continued to act in a threatening manner towards Ms. Crump, which prompted Ms. Crump to keep a cane at her desk for protection.  In addition, Ms. Crump was afraid to visit the restroom unless accompanied by another employee.  Several other employees reported Mr. Hoover's strange behavior to Mr. Taylor in emails and voiced their concerns in weekly office meetings attended by Mr. Taylor.  However, Mr. Taylor and AHP did not take any responsive action.

> On May 16, 2006, Mr. Hoover reported to work with .38 and .40 caliber handguns.  Mr. Hoover first shot Mr. Gibson, killing him with a single shot to the

---

[1] The State Decision is found at J.A. 510-18.  (Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

3

head. Ms. Crump and two of her coworkers were in the front of the office preparing for their workday when they heard this gunshot. Mr. Hoover then came from the rear of the office and began shooting at Ms. Crump, who was hit several times. One of her coworkers pulled Ms. Crump into an office and closed the door. However, Mr. Hoover shot through the door, and then entered the office, executing Ms. Crump, shooting her at point-blank range in the head. Mr. Hoover committed suicide shortly after the shootings when the police officers entered the building.

State Decision 2-3. Additionally, each complaint alleged that Hoover's "conduct towards [Crump and Gibson] was based upon his personal jealousy and did not arise from any known employment issues with either [Crump, Gibson, or AHP]." J.A. 73, 82.

The state trial court and the Virginia Workers' Compensation Commission (the "state commission") both determined that, based on workers' compensation law, the deaths of Crump and Gibson did not arise out of their employment with AHP. In the state trial court, AHP initially demurred to both wrongful death actions, arguing that they were barred by Virginia's workers' compensation exclusivity provision, see Va. Code Ann. § 65.2-307, because the deaths arose out of and in the course of Crump's and Gibson's employment, see id. § 65.2-300(A) (providing that workers' compensation covers "personal injury or death by accident arising out of and in the course of the employment"). By its State Decision, the state trial court overruled AHP's demurrers, explaining that, although the deaths had occurred "in the course of" Crump's and Gibson's employment,

4

they did "arise out of" such employment, in that the shootings were "not directed against [Crump and Gibson] as employees or because of their employment." State Decision 5.

Following the State Decision, AHP sought a ruling from the state commission that it had exclusive jurisdiction over the wrongful death actions. On July 18, 2007, the state commission determined that, for workers' compensation purposes, the deaths of Crump and Gibson did not arise out of their employment with AHP. Next, back in the state trial court, AHP filed pleas in bar, again asserting that the workers' compensation exclusivity provision barred the wrongful death actions. The state trial court conducted an evidentiary hearing and subsequently overruled AHP's pleas in bar on July 31, 2007.

## B.

Admiral had issued AHP a "Commercial General Liability Policy" (the "Admiral Policy") in which it agreed to pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury.'" J.A. 293. The Admiral Policy explicitly excludes coverage, however, for "[a]ny obligation of the insured under a workers' compensation . . . law," and for "'[b]odily injury' to . . . [a]n 'employee' of the insured arising out of and in the course of . . . [e]mployment by the insured." Id. at 294 (emphasis added). The Admiral

5

Policy has an "Each Occurrence Limit" of $1 million. Id. at 289.

Meanwhile, Ace had issued AHP a "Workers Compensation and Employers Liability Insurance Policy" (the "Ace Policy"). Under the "Workers Compensation Insurance" portion of the Ace Policy, Ace agreed to pay "the benefits required of [AHP] by the workers compensation law." J.A. 387. Under the "Employers Liability Insurance" portion of the Policy, Ace agreed to pay for "[b]odily injury includ[ing] resulting death," on the condition that "[t]he bodily injury must arise out of and in the course of the injured employee's employment by [AHP]." Id. at 388 (emphasis added). The limit of Ace's liability under its "Employers Liability Insurance" coverage for "Bodily Injury by Accident" is $1 million for "each accident." Id. at 393.

Finally, Illinois Union had issued AHP an "Excess Umbrella Policy" (the "Illinois Union Umbrella Policy"), providing coverage in excess of the Admiral and Ace Policies. The Illinois Union Umbrella Policy's "Excess Liability" coverage is "subject to the same terms and conditions as the 'underlying insurance.'" J.A. 439. The Umbrella Policy has a "General Aggregate Limit" of $10 million. Id. at 412.

Admiral denied coverage to AHP for the Crump and Gibson suits by letter of December 13, 2006, and Ace provided a defense to AHP under a reservation of rights confirmed by letter to AHP

6

of August 2, 2007.  Before trial in either matter, AHP and the plaintiffs engaged in unsuccessful mediation efforts.  The Crump suit proceeded first to trial, in September 2007, and the jury returned a verdict against AHP in the sum of $3.1 million.  Thereafter, the parties again attempted mediation before trial of the Gibson suit.  Because Ace and Illinois Union required Admiral's contribution before they would offer their coverage limits, Admiral participated in the mediation.  Ultimately, the parties were able to reach a global settlement of both suits for the aggregate sum of $3.6 million.  Admiral paid $1 million, Ace paid $1 million, and Illinois Union paid $1.6 million.  As a condition thereof, the three insurers reserved the right to pursue indemnification and contribution claims against each other.

C.

On June 30, 2008, Admiral filed a complaint in the Western District of Virginia, invoking subject matter jurisdiction under 28 U.S.C. § 1332, and seeking indemnification and/or contribution from Ace and Illinois Union as the primary and excess insurers for the losses at issue.  On July 25, 2008, Ace and Illinois Union filed counterclaims against Admiral, seeking indemnification and/or contribution, plus other relief.  Ace sought, inter alia, recovery of its costs in defending AHP — approximately $383,500 after AHP's payment of its $250,000 self-

7

insured retention under the Ace Policy. For its part, Illinois Union sought, inter alia, recovery of $1 million of its $1.6 million settlement payment on the theory that Admiral was liable for a $2 million share of the settlement (not just the $1 million it paid) because the shootings of Crump and Gibson constituted two "occurrences."

The parties filed cross-motions for summary judgment on October 31, 2008. In its Memorandum Opinion of March 24, 2009, the district court carefully assessed the parties' contentions, and ultimately determined to grant Admiral's summary judgment motion and deny those of Ace and Illinois Union. See <u>Admiral Ins. Co. v. ACE Am. Ins. Co.</u>, No. 5:08-cv-00055 (W.D. Va. Mar. 24, 2009) (the "District Court Opinion").[2] Admiral's primary contention was that it was entitled to summary judgment "because the deaths of Crump and Gibson arose out of and in the course of their employment with AHP and are therefore covered under Ace's 'Workers Compensation and Employer Liability Policy' and excluded from coverage under Admiral's 'Commercial General Liability Policy.'" District Court Opinion 5-6. Ace and Illinois Union maintained, however, that the phrase "arising out of" employment in the Admiral and Ace Policies holds "the same 'well-defined' meaning it has under workers' compensation law";

_____

[2] The District Court Opinion is found at J.A. 614-29.

8

as such, the district court was "constrained to conclude," as the state trial court and the state commission had ruled, "that Crump's and Gibson's deaths did not arise out of their employment." Id. at 6. According to Ace and Illinois Union, Admiral was thus obliged to defend and indemnify AHP.

In assessing the parties' contentions, the district court first recognized that, because the Admiral Policy "was delivered to AHP's Tennessee headquarters, Tennessee law governs the interpretation of its policy language." District Court Opinion 7 & n.5 (citing Seabulk Offshore, Ltd. v. Am. Home Assurance Co., 377 F.3d 408, 418-19 (4th Cir. 2004)). The court then observed that, under Tennessee law, "courts must give policy language its 'common and ordinary meaning,'" id. at 8 (citing Tata v. Nichols, 848 S.W.2d 649, 650 (Tenn. 1993)) — without giving controlling force to definitions in workers' compensation law that have not been expressly incorporated into the policy, id. at 8-10 (citing Blue Diamond Coal Co. v. Holland-Am. Ins. Co., 671 S.W.2d 829 (Tenn. 1984); Tenn. Farmers Mut. Ins. Co. v. Cherry, No. W2007-00342COAR3CV, 2008 WL 933479 (Tenn. Ct. App. Apr. 7, 2008); Am. Indem. Co. v. Foy Trailer Rentals, Inc., No. W2000-00397COAR3CV, 2000 WL 1839131 (Tenn. Ct. App. Nov. 28, 2000)). The court concluded that the "arising out of" employment language in the Admiral Policy exclusion "is plain and unambiguous," and that workers' compensation law, having not

9

been explicitly referenced in the exclusion, "is irrelevant to its meaning." Id. at 8. The court further concluded that the deaths of Crump and Gibson "arose out of" their employment — as that phrase is commonly and ordinarily understood — in that "both employees were killed on AHP's premises, during working hours, by a co-employee, and both wrongful death suits sought to hold AHP liable for its failings as an employer." Id. at 6.

Based on this analysis, the district court rejected Ace and Illinois Union's contention that Admiral was required to indemnify AHP. See District Court Opinion 15. Furthermore, the court rejected Ace and Illinois Union's assertion that Admiral was yet obligated to defend AHP in light of the allegations in the Crump and Gibson complaints that Hoover's "conduct towards [Crump and Gibson] was based upon his personal jealousy and did not arise from any known employment issues with either [Crump, Gibson, or AHP]." See id. at 12-13 (recognizing that, under Tennessee law, "[a]n insurer owes its insured a duty to defend unless 'it is plain from the face of the complaint that the allegations fail to state facts that bring the case within or potentially within the policy's [coverage]'" (quoting Drexel Chem. Co. v. Bituminous Ins. Co., 933 S.W.2d 471, 480 (Tenn. Ct. App. 1996))). In rejecting the duty-to-defend contention, the court explained that

it was plain from the face of the Crump and Gibson complaints that their deaths arose out of and in the course of their employment with AHP. Both wrongful death actions asserted that AHP, as Crump and Gibson's employer, failed to provide a safe workplace and failed to exercise reasonable care in retaining a subordinate. Each complaint alleged that Hoover, a co-employee, shot and killed Crump and Gibson during working hours at AHP's workplace, even after Crump and other AHP employees placed AHP's manager on notice about Hoover's prior threatening behavior. Each complaint sought to hold AHP liable as an employer because its negligence proximately caused Crump and Gibson's deaths. It is therefore clear that the complaints alleged that Crump and Gibson's deaths resulted from their employment relationships with AHP and therefore arose out of and in the course of their employment for the purposes of Tennessee law. The lone allegation that Hoover's conduct "did not arise from any known employment issues with either [Crump, Gibson, or AHP]" does not change this result. Contextually, this allegation simply characterizes Hoover's personal motivation. Irrespective of Hoover's personal motivation, the other circumstances alleged in the complaints by themselves support only one conclusion: Crump and Gibson's deaths arose out of their employment with AHP.

Id. at 13-14 (citation omitted). Finally, the court agreed with Admiral that, "because the deaths of Crump and Gibson arose out of and in the course of their employment, Ace was obligated to provide coverage under its 'Employers Liability Insurance.'" Id. at 15. "Accordingly," the court explained, "because Ace has paid its policy limit, and Illinois Union's excess coverage mirrored Ace's underlying coverage, Admiral is entitled to

11

indemnification in the amount of $1 million from Illinois Union." Id. at 16.[3]

Ace and Illinois Union have timely noted this appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

On appeal, Ace and Illinois Union maintain that the district court erred in awarding summary judgment to Admiral and in denying such judgment to them.[4] We review de novo the

---

[3] On the day of its summary judgment decision (March 24, 2009), the district court issued a Final Order entering judgment in favor of Admiral and against Ace and Illinois Union. The Final Order specified that Admiral "shall recover from Illinois Union . . . in the amount of $1 million, plus interest and costs." J.A. 630. Thereafter, on April 7, 2009, Admiral filed a motion to correct the judgment to allow prejudgment interest. On May 1, 2009, the court issued an Amended Final Judgment specifying that Admiral "shall recover from Illinois Union . . . in the amount of $1 million, plus prejudgment interest at a rate of 6% accruing from December 10, 2007 until March 24, 2009, and postjudgment interest and costs accruing from today's date." Id. at 676.

[4] More specifically, Ace and Illinois make six appellate contentions: (1) that Admiral breached its duty to defend AHP, because it was evident from the face of the complaints in the Crump and Gibson suits that the Admiral Policy exclusion does not bar all possibility of coverage; (2) that the district court's broad construction of the Admiral Policy exclusion contravened basic policy interpretation rules; (3) that the Admiral Policy exclusion is inapplicable; (4) that Admiral is estopped from denying its duties to defend and indemnify AHP; (5) that an additional exclusion in the Admiral Policy does not bar coverage; and (6) that Ace and Illinois Union are entitled to judgment on their counterclaims for recovery of defense costs (Continued)

12

district court's award of summary judgment to Admiral, viewing the facts in the light most favorable to Ace and Illinois Union, as the nonmoving parties.  See Lee v. York County Sch. Div., 484 F.3d 687, 693 (4th Cir. 2007).  We must vacate the summary judgment award unless "'there is no genuine issue as to any material fact and [Admiral] is entitled to a judgment as a matter of law.'"  Id. (quoting Fed. R. Civ. P. 56(c)).  Furthermore, if warranted by the uncontroverted facts, "we are free to enter an order directing summary judgment in favor of" Ace and Illinois Union.  Monahan v. County of Chesterfield, Va., 95 F.3d 1263, 1265 (4th Cir. 1996) (internal quotation marks omitted).

Having fully and carefully considered the contentions of the parties, we agree with the district court that Admiral was not obliged to defend or indemnify AHP.  We therefore affirm the court's judgment in favor of Admiral and against Ace and Illinois Union, essentially for the reasons explained in the District Court Opinion of March 24, 2009.

AFFIRMED

---

(Ace) and $1 million of its $1.6 million settlement payment (Illinois Union).